**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

RECEIVED

JUL 29 2016

AT 8:30 M
WILLIAM T. WALSH CLERK

ISRAEL VELEZ,

Plaintiff,

v.

COLONEL JOSEPH R. FUENTES, et al.,

Defendants.

Civil Action No. 15-6939 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendants State of New Jersey, Colonel Joseph R. Fuentes ("Colonel Fuentes"), and Trooper James Brettel's ("Trooper Brettel") (collectively, "State Defendants") motion to dismiss Plaintiff Israel Velez's ("Plaintiff") Complaint pursuant to Rules 12(b)(6) and 12(d), or in the alternative for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 27.) Defendants Township of Hamilton, Patrolman Keith McDonald ("Patrolman McDonald"), and Chief James W. Collins ("Chief Collins") (collectively, "Township Defendants") have joined State Defendants' motion to dismiss.[1] (ECF No. 29.) Plaintiff filed opposition (ECF No. 30), and State Defendants replied. (ECF No. 33.) The Court has carefully considered the parties' submissions and decides the matter without oral argument

[1] Township Defendants originally filed a motion to dismiss Counts Four through Eleven of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 5.) As the arguments in Township Defendants' motion to dismiss are incorporated in State Defendants' motion to dismiss, the Court shall address these arguments in the context of State Defendants' motion. (ECF No. 27.)

pursuant to Local Civil Rule 78.1. For the reasons stated below, State Defendants' motion to dismiss is granted in part and denied in part.

## I. Background[2]

This case arises from a traffic stop of Plaintiff conducted by Trooper James Brettel on September 17, 2013. (Compl. ¶ 18, ECF No. 1.) At about 3:00 p.m. on September 17, 2013, Plaintiff left his workplace in West Trenton, New Jersey, and was driving through the Hamilton area when he noticed that a state police car was following him with its lights on. (*Id.*; Certification of Robert P. Preuss ("Preuss Cert."), Ex. B ("Video") 14:45:26, ECF No. 27-3.) Shortly thereafter, Trooper Brettel instructed Plaintiff to pull over onto a side street. (Compl. ¶ 18; Video 14:45:31.) Trooper Brettel then approached Plaintiff on the driver's side of his car and asked for his license and registration. (Compl. ¶ 19; Video 14:46:28.) Plaintiff, having in the past been the subject of racial profiling, asked Trooper Brettel the reason for the stop. (Compl. ¶ 19; Video 14:46:30.) In response, Trooper Brettel stated that he would tell him the reason for the stop after Plaintiff provided his license and registration. (Video 14:46:35.) Thereafter, Plaintiff requested that Trooper Brettel contact his shift supervisor and have him present. (*Id.* at 14:46:52.) Trooper Brettel refused to call his supervisor and repeated his request for Plaintiff's license and registration. (*Id.* at 14:47:03; Compl. ¶ 19.) Plaintiff repeated his inquiry as to the reason for the stop. (Video 14:47:21.) Trooper Brettel then asked for Plaintiff's license and registration and stated that he

[2] In addressing a motion to dismiss, the Court must accept the allegations in the Complaint as true. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Thus, the facts provided are taken from Plaintiff's Complaint. (ECF No. 1.) In addition, because State Defendants have also moved for summary judgment, certain materials outside the pleadings, in particular the parties' briefs and the video from the camera in the police vehicle ("Video") of the incident, may be considered with respect to the motion for summary judgment. The Court will not, however, consider this evidence in deciding the motion to dismiss.

would not ask Plaintiff for these documents again. (Video 14:47:35.) Trooper Brettel then attempted to open Plaintiff's car door and forcibly remove Plaintiff from his car. (*Id.* at 14:47:39; Compl. ¶ 19.) Plaintiff, however, pulled the car door shut and leaned away from Trooper Brettel. (Video 14:47:45.) Trooper Brettel then used his foot for leverage to open the car door, and, while Plaintiff leaned further into his car and called out to bystanders for help, applied pepper spray to Plaintiff's face. (*Id.* at 14:47:49-58; Compl. ¶ 19.) Plaintiff put his hands in front of his face and began to exit the vehicle while still calling out for help. (Video 14:48:00.) Plaintiff then pulled his hands away as Trooper Brettel attempted to grab his wrists and Plaintiff continued to call out to bystanders for help. (*Id.* at 14:48:07.) The two continued to struggle until Patrolman McDonald approached the scene and punched Plaintiff in the head. (Compl. ¶ 20; Video 14:48:08-31.) Trooper Brettel, Patrolman McDonald, and at least two other unidentified officers then forced Plaintiff to the ground, handcuffed him, and placed him under arrest. (Compl. ¶ 20; Video 14:48:32-49:50.)

Plaintiff now brings claims against State Defendants and Township Defendants (collectively, "Defendants"). (Compl. ¶¶ 8-13.) In Count One, Plaintiff alleges that Defendants violated his rights under the Fourth, Fifth, and Fourteenth Amendments of the Constitution by: (1) detaining Plaintiff without probable cause; (2) searching and seizing Plaintiff and/or his property without probable cause; (3) using excessive force; (4) creating a danger and undue risk to Plaintiff; (5) falsely arresting Plaintiff without probable cause; (6) falsely imprisoning Plaintiff; (7) maliciously prosecuting Plaintiff; and (8) denying Plaintiff equal protection under the law. (*Id.* ¶ 30.) Additionally, Plaintiff alleges that Colonel Fuentes and Chief Collins (collectively, "Supervisor Defendants") insufficiently trained and supervised their subordinates, and that, collectively, Defendants' actions constituted a policy, practice, procedure, or custom of the New

Jersey and Hamilton Township police departments. (*Id.* ¶¶ 31-33.) In Counts Two and Three, Plaintiff brings state constitutional claims under the New Jersey Civil Rights Act ("NJCRA"), alleging that Defendants violated his civil rights pursuant to N.J.S.A. 10:6-2. (*Id.* ¶¶ 37-51.) These claims are based on the same facts and allegations as Plaintiff's federal constitutional claims. Finally, in Counts Four through Eleven, Plaintiff brings common law tort claims for: (1) false imprisonment/false arrest/malicious prosecution; (2) civil conspiracy; (3) intentional infliction of emotional distress; (4) abuse of process; (5) loss of reputation; (6) intentional interference with economic advantage; (7) battery; and (8) negligence. (*Id.* ¶¶ 52-103.) Plaintiff seeks compensatory damages, punitive damages, interest, and attorneys' fees. (*Id.* at Prayer for Relief ¶¶ B-E.)

## II. <u>Motion to Dismiss</u>

### A. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, the Court first separates the factual and legal elements of a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "The . . . Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. The facts alleged in the complaint must "show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211.

### B. Analysis

In in their motion, State Defendants argue that the Complaint fails to allege facts that would support Plaintiff's constitutional claims, and that the Video shows both that Defendants acted reasonably under the circumstances and that they did not violate Plaintiff's rights. (State Defs.'

Moving Br. 7, ECF No. 27-7.) State Defendants also argue that Plaintiff's common law tort claims, Counts Four through Eleven, must be dismissed because Plaintiff failed to file a notice of claim as required by the New Jersey Tort Claims Act ("NJTCA"). (*Id.* at 35 (citing N.J.S.A 59:8-8).)

In opposition, Plaintiff argues that he has stated a claim in regards to the alleged constitutional violations, and should be allowed to proceed to discovery, as there are genuine disputes of material fact. (Pl.'s Opp'n Br. 2, ECF No. 30.) Plaintiff also argues that Trooper Brettel and Patrolman McDonald are not entitled to qualified immunity because a reasonable person could find that the officers' actions were not reasonable under the circumstances. (*Id.* at 26-27.) Finally, Plaintiff asserts that his failure to file a notice of claim is not fatal to his common law tort claims because the NJTCA does not provide protection for conduct outside of employment, or for a crime, actual fraud, actual malice, or willful misconduct. (*Id.* at 29 (citing N.J.S.A. 59:3-14(a)).) For the reasons discussed below, the Court finds that Plaintiff has sufficiently alleged a claim of excessive force under the federal and state constitutions, but that Plaintiff's common law tort claims are barred by his failure to comply with the NJTCA's notice requirements. In addition, with respect to Plaintiff's excessive force claim, the Court finds that there are disputes as to material facts that preclude summary judgment at this time.

**1. Federal Constitutional Claims Against Brettel and McDonald**

Plaintiff brings federal constitutional claims against Trooper Brettel and Patrolman McDonald under 42 U.S.C. § 1983. (Compl. ¶ 2.) Section 1983 "provides a remedy for the violation of rights created by federal law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a *person* acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988)

(emphasis added). In his Complaint, Plaintiff alleges violations of the Fourth, Fifth, and Fourteenth Amendments. (Compl. ¶¶ 27-30.)

***a. Unlawful Detainment, Search, and Seizure***

The lawfulness of the initial traffic stop is properly analyzed under the Fourth Amendment, as "[a] traffic stop is a 'seizure' within the meaning of the Fourth Amendment." *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006). The traffic stop is valid if the officer has a reasonable, articulable suspicion that a violation has occurred. *Id.* In the Complaint, Plaintiff states that "having in the past been the subject of racial profiling by the police . . . [he] asked Defendant Brettel why he was pulled over." (Compl. ¶ 19.) Other than this statement regarding Plaintiff's reason for inquiring as to the basis for the traffic stop, in the Complaint, Plaintiff does not explicitly dispute the lawfulness of the traffic stop. Moreover, in the Complaint, Plaintiff does not allege any facts to support his conclusory assertion that he was "maliciously racially profiled" (*Id.* ¶ 1), such as his belief that he had not committed a traffic infraction, Trooper Brettel's knowledge of his race, or even his race. Thus, while Trooper Brettel's refusal to tell Plaintiff the reason for the stop before receiving Plaintiff's license and registration may have made Plaintiff doubt the lawfulness of the initial stop, this allegation is insufficient to state a claim for a violation of the Fourth Amendment.

Similarly, Plaintiff fails to plead sufficient facts to state a claim for false arrest. "To state a claim for false arrest under the Fourth Amendment, a plaintiff must allege (1) that there was an arrest, and (2) that the arrest was made without probable cause." *Gonzalez v. Bobal*, No. 13-1148, 2015 WL 1469776, at *4 (D.N.J. Mar. 30, 2015) (citing *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)). While it is undisputed that Plaintiff was arrested, Plaintiff fails to satisfy the second element of the claim – that the arrest was made without probable cause. As Plaintiff

does not allege sufficient facts to support his claim that the initial traffic stop was unlawful, it follows that there was probable cause to arrest Plaintiff after he failed to comply with Trooper Brettel's instructions during the stop. *Brown v. Makofka*, No. 15-1537, 2016 WL 1056064, at *4 (3d Cir. Mar. 17, 2016) ("if an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender"). Moreover, Plaintiff does not dispute that he failed to comply with multiple instructions by Trooper Brettel to produce his license and registration, as well as Trooper Brettel's instruction to step out of his car. (Pl.'s Response to State Defs.' Statement of Material Facts ("RSOM") ¶ 3, ECF No. 30.) Plaintiff's blanket statement that "[t]heir actions were unlawful" (Compl. ¶ 21) is insufficient to state a claim for false arrest, given Plaintiff's admitted failure to produce his license and registration in compliance with N.J.S.A. 39:3-29.[3]

Next, Plaintiff generally alleges that Defendants violated his constitutional rights by "[s]earching and seizing [his] person and/or property . . . without probable cause." (Compl. ¶ 30b.) In his opposition brief, Plaintiff argues that "the seizure of evidence from [his] vehicle cannot be used in this case by defendants as a basis to legitimize the physical assault upon [him]" and that "[d]efendants' backward-looking argument . . . attempts to justify Trooper Brettel's conduct by focusing on items later seized illegally from [P]laintiff's car." (Pl.'s Opp'n Br. 22.) To the extent that Plaintiff is attempting to claim that the search of his car was unreasonable, he has failed to allege sufficient facts in support of that claim. "Officers may conduct a warrantless search of a vehicle incident to arrest in two instances: '(1) if the arrestee is within reaching distances of the vehicle during the search, or (2) if the police have reason to believe that the vehicle contains

[3] Given that Plaintiff has failed to state a claim for false arrest, his claim for false imprisonment must also fail. *See Bobal*, 2015 WL 1469776, at *6 ("[a] claim for false imprisonment derives from a claim for false arrest").

evidence relevant to the crime of arrest.'" *United States v. Brown*, 765 F.3d 278, 290 (3d Cir. 2014) (quoting *Davis v. United States*, 564 U.S. 229, 234-35 (2011)). All Plaintiff states in his Complaint is that his "person *and/or* property" were "search[ed] and seiz[ed]" without probable cause. (Compl. ¶ 30b (emphasis added).) In his Complaint, Plaintiff does not even mention the officers searching his car, which parts of the car they searched, or what was recovered from it. Thus, the Court finds that Plaintiff has failed to plead sufficient facts to state a claim that the search of his vehicle incident to arrest was unlawful. To the extent that Plaintiff bases this claim on the allegations that the initial traffic stop or Plaintiff's arrest were unlawful, the Court has found that Plaintiff failed to state a claim in regards to those allegations. These claims are dismissed without prejudice.

***b. Excessive Force***

Excessive force claims that arise out of "an arrest, investigatory stop, or other 'seizure' . . . are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). Therefore, any of Plaintiff's claims based on the physical altercation will be analyzed under this standard, as "the Fourth Amendment provides an explicit textual source of constitutional protection against . . . physically intrusive governmental conduct." *Id.* at 395. This requires a fact specific inquiry that, considering the totality of the circumstances, balances the nature and quality of the individual deprivation against the countervailing government interests. *Id.* at 396. It is an objective standard that does not consider individual officers' underlying motivations and judges an officer's conduct "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," taking into account that "officers are often forced to make split-second judgments." *Id.* at 396-97. While the standard gives deference to the unique circumstances officers face in effectuating arrests, "[t]he

right of the people to be secure in their persons . . . against unreasonable searches and seizures, [still must] not be violated." U.S. Const. amend. IV. "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999). In the Complaint, Plaintiff alleges that his Fourth Amendment rights were violated by Trooper Brettel and Patrolman McDonald when Trooper Brettel sprayed pepper spray at his face, forcibly removed him from his vehicle, and Patrolman McDonald soon after approached the scene and punched Plaintiff in the head. (Compl. ¶¶ 19-20.) Viewing these facts in the light most favorable to Plaintiff, it is plausible that, given the circumstances, Trooper Brettel and Patrolman McDonald used excessive force to detain Plaintiff.

### c. *Violation of Equal Protection and Due Process Rights*

Plaintiff also brings equal protection and due process claims under the Fifth and Fourteenth Amendments. (Compl. ¶¶ 28-30.) Plaintiff alleges that he was racially profiled and states that he has been the subject of racial profiling in the past. (*Id.* ¶¶ 1, 19.) "In order to bring an equal protection claim based on racial profiling under 42 U.S.C. [§] 1983, Plaintiff must show that the officer's conduct (1) had a discriminatory effect and (2) was motivated by a discriminatory purpose." *Mitchell v. Twp. of Willingboro Municipality Gov't*, No. 11-1664, 2011 WL 3203677, at *5 (D.N.J. July 26, 2011) (citing *Bradley v. United States*, 299 F.3d 197, 205-06 (3d Cir. 2002)). Demonstrating discriminatory effect requires Plaintiff to "show that [he] is a member of a protected class and that [he] was treated differently from similarly situated individuals in an unprotected class." *Bradley*, 299 F.3d at 206. "[M]ere invocation of the phrase 'racial profiling' without more, is simply a legal conclusion, not a factual basis for a claim." *Mitchell*, 2011 WL 3203677, at *5. As discussed above, in his Complaint, Plaintiff failed to allege facts to support a

claim for racial profiling. While Plaintiff discusses "the deep-rooted history of racial profiling in the State of New Jersey and the extensive past litigation arising from that unlawful conduct," and cites the New Jersey Legislative Black and Latino Caucus' 1999 publication titled "A Report on Discriminatory Practices Within the New Jersey State Police" in his opposition brief (Pl.'s Opp'n Br. 17), Plaintiff may not amend his pleading by including new allegations in his opposition brief. *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (stating that a complaint may not be amended by briefs in opposition to a motion to dismiss). Accordingly, Plaintiff has failed to state a claim that he was denied equal protection under the law. This claim is dismissed without prejudice.

With respect to Plaintiff's due process claim, to state a claim for deprivation of procedural due process Plaintiff "must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Ochner v. Stedman*, 572 F. App'x 143, 148-49 (3d Cir. 2014) (internal quotation marks omitted). While the Complaint does not identify the particular interest at issue, construing the facts in the light most favorable to Plaintiff, Plaintiff appears to argue that Trooper Brettel's failure to disclose the reason for the traffic stop when he demanded Plaintiff's license and registration was a violation of Plaintiff's due process rights. While in some circumstances, it may be good practice for an officer to respond to such an inquiry, Plaintiff does not cite, and the Court is not aware, of any case law holding that an officer's failure to respond to such an inquiry before demanding license and registration constitutes deprivation of procedural due process. Moreover, there may be safety concerns in doing so when, for example, the reason for the stop is that the car matches the description of a car containing a person suspected of committing a violent crime.

In addition, insofar as Plaintiff's Complaint can be read to allege deprivation of substantive due process, the allegations in the Complaint fail to state a claim for relief. "Conduct can violate substantive due process if it shocks the conscience, which encompasses only the most egregious official conduct." *Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010). The failure of Trooper Brettel to disclose the reason for the traffic stop before demanding Plaintiff's identification does not shock the conscience. Moreover, to the extent that Plaintiff alleges that Trooper Brettel and Patrolman McDonald's use of force with respect to Plaintiff violated his substantive due process rights, this claim is properly analyzed under the Fourth Amendment. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham*, 490 U.S. at 395). Likewise, Plaintiff's probable cause and undue risk claims are properly analyzed under the Fourth Amendment, as opposed to under substantive due process, since "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Id.* at 274. Relying on substantive due process is not appropriate "when doing so w[ill] . . . duplicate[] protection that a more specific constitutional provision already bestow[s]." *Id.* at 288 (Souter, J., concurring). While Plaintiff has stated a claim for excessive force under the Fourth Amendment, he states no additional facts that require a separate substantive due process analysis. Therefore, the allegations in the Complaint are insufficient to state a claim for deprivation of substantive due process, and this claim is dismissed without prejudice.

***d. Malicious Prosecution***

To state a § 1983 malicious prosecution claim, "a plaintiff must establish the elements of the common law tort as it has developed over time, and that there has been a seizure." *Smith v. New Jersey*, No. 12-478, 2012 WL 5185611, at *4 (D.N.J. Oct. 18, 2012) (internal quotation marks omitted). "Under New Jersey law, the . . . elements . . . are: (1) the criminal action was instituted by the defendant against the plaintiff, (2) it was actuated by malice, (3) there was an absence of probable cause for the proceeding, and (4) the criminal proceeding was terminated favorably to the plaintiff." *Id.* Since charges against Plaintiff stemming from this incident are still pending (Pl.'s Opp'n Br. 22), Plaintiff cannot establish the fourth element required for a malicious prosecution claim at this time. Also, as previously stated, Plaintiff has not plead sufficient facts to allege that there was an absence of probable cause for his arrest. Thus, this claim is dismissed without prejudice.

**2. State Constitutional Claims Against Brettel and McDonald**

Given that Plaintiff has pled sufficient facts to state a § 1983 excessive force claim, Plaintiff has also adequately stated a claim under the NJCRA. As the NJCRA was modeled after § 1983, "courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983" and "have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Samoles v. Lacey Twp.*, No. 12-3066, 2014 WL 2602251, at *15 (D.N.J. June 11, 2014) (internal quotation marks omitted). Accordingly, State Defendants' motion to dismiss Plaintiff's state constitutional claims against Defendants Trooper Brettel and Patrolman McDonald is denied.

### 3. Federal Constitutional Claims Against Hamilton Township, State of New Jersey, Colonel Fuentes, and Chief Collins

Plaintiff has failed to plead sufficient facts to state a claim against Hamilton Township or the State of New Jersey, or against Trooper Brettel, Patrolman McDonald, Colonel Fuentes, and Chief Collins in their official capacities. Neither a state, nor its officials are "persons" for the purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *Dorsett v. N.J. State Police*, No. 04-5652, 2007 WL 556890, at *2-3 (D.N.J. Feb. 15, 2007). Further, "[i]t is well settled that the New Jersey State Police is an arm of the state and thus not a person within the meaning of § 1983." *Bobal*, 2015 WL 1469776, at *3. "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State . . . The Eleventh Amendment bars such suits unless the State has waived its immunity." *Will*, 491 U.S. at 66. Since immunity has not been waived here, and neither states nor their officials are subject to liability under § 1983, Plaintiff's constitutional claims against Hamilton Township, the State of New Jersey, and Colonel Fuentes and Chief Collins in their official capacities are dismissed with prejudice.

Additionally, Plaintiff may not base his claims against Colonel Fuentes and Chief Collins in their personal capacities solely on the basis of conduct by their employees or agents. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Plaintiff bases his claims against Supervisor Defendants on "the deep-rooted history of racial profiling in the [s]tate of New Jersey and extensive past litigation arising from that unlawful conduct." (Pl.'s Opp'n Br. 17.) Plaintiff's claims of "permit[ing] a policy or custom under which unconstitutional practices occurred" and inadequate training and supervision are conclusory in nature. (Compl. ¶¶ 31-32.) In the Complaint, Plaintiff does not state specific facts

regarding how the policy or custom(s) of either the Hamilton Township or State of New Jersey police departments caused his injury that would allow his claim to cross "the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) ("to sustain a § 1983 claim for municipal liability, the plaintiff must 'simply establish a municipal custom coupled with causation'") (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)).

Causation requires "a plausible nexus or affirmative link between the . . . custom and the specific deprivation of constitutional rights at issue." *Bielevicz*, 915 F.2d at 850. In addition, Plaintiff is required to show "deliberate indifference to the constitutional rights of [the state's] inhabitants." *Groman*, 47 F.3d at 637 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989)). Plaintiff's vague claims of a policy or custom and inadequate training/supervision, without anything more, are insufficient to state a claim under § 1983 against Supervisor Defendants. Accordingly, Plaintiff's constitutional claims against Supervisor Defendants are dismissed without prejudice.

**4. Common Law Tort Claims**

Plaintiff does not dispute that he did not file a tort claims notice, as required by the NJTCA, with either the State of New Jersey or the Township of Hamilton. Instead, Plaintiff relies on N.J.S.A. 59:3-14(a), which states, "[n]othing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." N.J.S.A. 59:3-14(a). Plaintiff cannot circumvent his failure to file the required notice by stating that the action was filed against the individual defendants in both their official and personal capacities. The NJTCA's "notice requirement appl[ies] to conduct that arguably could be classified as the intentional or outrageous

conduct described in N.J.S.A. 59:3-14." *Velez v. City of Jersey City*, 180 N.J. 284, 294-95 (2004).

While N.J.S.A. 59:3-14 does provide an exception to immunity under the NJTCA, "th[is] provision must be read together with the overall mandate of N.J.S.A. 59:8-3 . . . " and "does not limit the necessity of notice." *Id.* at 294. "As both the New Jersey Supreme Court and courts of this district have recognized, failure to provide notice under the NJTCA waives a claim, even if the officer would not be entitled to immunity otherwise." *Panarello v. City of Vineland*, No. 12-4165, 2016 WL 475246, at *5 (D.N.J. Feb. 8, 2016) (citing *Velez*, 180 N.J. at 294-95; *Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 354 (D.N.J. 2015)). Because it is undisputed that Plaintiff did not file a tort claims notice with either the State of New Jersey or the Township of Hamilton, and because N.J.S.A. 59:8-8 provides that failure to file a claim within ninety days of accrual of the claim forever bars recovery, Plaintiff's common law tort claims – Counts Four through Eleven of the Complaint – are dismissed with prejudice.

## III. Defendants' Motion for Summary Judgment

State Defendants move in the alternative for summary judgment on Plaintiff's Complaint, arguing that the Video shows as a matter of law that Defendants acted reasonably during the traffic stop. (State Defs.' Moving Br. 13.) Having found that Plaintiff has sufficiently stated an excessive force claim, the Court will consider whether State Defendants are entitled to summary judgment on this claim.

### A. Legal Standard

Under Rule 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Rule 56(a) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. While the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Id.* at 250. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists, then the court must grant summary judgment. *Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Furthermore, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 209 (D.N.J. 2001).

**B. Analysis**

As discussed above, to state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, "[P]laintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham*, 183 F.3d at 288 (citing *Brower v. Cty. of Inyo*, 489 U.S. 593, 599 (1989)). This inquiry is an objective one, that takes into account the facts and circumstances of each particular case, which include the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, whether the individual is actively resisting arrest, whether an injury was sustained by the suspect (and the severity of the injury), the duration of the officer's action, and the number of persons with whom the officers must contend at one time. *See Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004). The reasonableness of a particular use of force is determined from the vantage point of the defendant officer at the time that the incident occurred, not with the benefit of hindsight. *Graham*, 490 U.S. at 396. Courts also recognize that police are often compelled to make split-second decisions as to how to employ force while involved in tense, uncertain, and rapidly evolving circumstances. *Id.* at 397. Thus, "[n]ot every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Id.* at 396 (internal citation omitted). "While determining the question of reasonableness is frequently one that should be left to the ultimate factfinder, summary judgement is appropriate when the court resolves all factual disputes in favor of the plaintiff and concludes that the use of force was objectively reasonable under the circumstances." *Gravely v. Speranza*, 219 F. App'x 213, 215 (3d Cir. 2007).

Here, discovery has not commenced. State Defendants, however, argue that discovery is not necessary because "[t]he video of the [P]laintiff's arrest shows, as a matter of law, that the force used by Trooper Brettel was not excessive." (State Defs.' Moving Br. 17.) While the video of Plaintiff's arrest provides the Court with important insight into the events at issue, "[a]ny assessment of the probative value of video evidence must take into account that the camera, while an immutable witness, can only describe events from the particular perspective of the video's lens." *Breeland v. Cook*, No. 12-2511, 2014 WL 820167, at *4 (M.D. Pa. Mar. 3, 2014). For example, here the video does not capture the events leading up to the stop, nor does it allow the Court to hear everything said by Plaintiff, or see the interaction between Plaintiff, Trooper Brettel,

and Patrolman McDonald when Plaintiff was on the ground. The video evidence is "subject to all of the vagaries and limitations of [the camera's] perspective" and "commentators [have] caution[ed] courts to refrain from a reflexive reliance on equivocal video evidence when reaching ultimate legal conclusions." *Id.* (citations omitted). While it is true that "where . . . there is video footage related to the claims, the Court will not draw inferences that are inconsistent with the video evidence," *Samoles*, 2014 WL 2602251, at *3 (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)), the Court is not required to accept the video tape as the only account of the incident. Accordingly, based on the procedural posture of the case, the Court finds that genuine disputes of material fact remain that preclude granting summary judgment at this time.

## IV. Conclusion

For the reasons set forth above, the Court denies State Defendants' motion to dismiss with respect to Counts One, Two, and Three against Defendants Trooper Brettel and Patrolman McDonald. The Court grants State Defendants' motion to dismiss against Defendants Trooper Brettel and Patrolman McDonald with respect to Counts Four through Eleven. Counts Four through Eleven of Plaintiff's Complaint are dismissed with prejudice. The Court grants State Defendants' motion to dismiss against Defendants Colonel Fuentes, Chief Collins, Township of Hamilton, and State of New Jersey. All Counts against Defendants Township of Hamilton, State of New Jersey, and Colonel Fuentes and Chief Collins in their official capacities are dismissed with prejudice. Counts One, Two, and Three against Defendants Colonel Fuentes and Chief Collins in their individual capacities are dismissed without prejudice. State Defendants' motion in the alternative for summary judgment is denied. Township Defendants' motion to dismiss is denied as moot. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** July 29, 2016